# In the United States Court of Federal Claims

No. 21-1261
(Filed: 17 December 2021)
NOT FOR PUBLICATION

```
*************************************
MICHAEL A. BRUZZONE,              *
                                  *
              Plaintiff,          *
                                  *
v.                                *
                                  *
THE UNITED STATES,                *
                                  *
              Defendant.          *
                                  *
*************************************
```

*Michael A. Bruzzone*, pro se, of Richmond, California.

*Daniel A. Hoffman*, Trial Attorney, with whom were *Reginald T. Blades, Jr.*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, D.C., for the defendant.

## ORDER

**HOLTE**, **Judge**.

Pro se plaintiff Michael Bruzzone filed a complaint alleging various statutory and contractual claims related to his previously filed qui tam actions against Intel Corporation for anticompetitive behavior. Plaintiff's claims include: (1) entitlement to a percentage of Intel Corporation's 2010 settlement with the Federal Trade Commission; (2) a new qui tam action against Intel Corporation; and (3) breach of contract and the implied covenant of good faith and fair dealing by the government. The following parties are implicated in plaintiff's complaint: (1) Intel Corporation; (2) the United States Attorney's Office for the Northern District of California; (3) the United States General Services Administration, Office of the Inspector General—San Francisco Bureau; and (4) Judge Alsup of the U.S. District Court for the Northern District of California. The government moved to dismiss plaintiff's claims for lack of subject-matter jurisdiction under RCFC 12(b)(1). For the following reasons, the Court grants the government's motion to dismiss and dismisses plaintiff's complaint.

## I. Background

### A. Factual History

The Court draws the following facts from plaintiff's filings, "accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in [the nonmovant's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *see also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) ("In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, unchallenged allegations of the complaint should be construed favorably to the pleader." (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))).

From 1991–98, plaintiff states he consulted for various semiconductor manufacturing companies, including Intel Corporation ("Intel"). *See* Compl. at 8, ECF No. 1. Plaintiff alleges he discovered Intel's engagement in several anticompetitive practices, including price fixing and cooperative advertising. *Id.* In response, plaintiff reported these findings to the Federal Bureau of Investigation ("FBI") and the Federal Trade Commission ("FTC"). *Id.* at 7, 43–44, 46. Plaintiff claims, without support, that he was "[e]nlisted by the Federal Trade Commission" as a "technical [discovery] aid" in 1998. *Id.* at 25 (alteration in original). For years, plaintiff continuously submitted allegations of Intel's misconduct to various federal agencies. *Id.* at 47–49, 51, 55–58. Concurrently, plaintiff engaged in extensive litigation.[1] *See* Def.'s Mot. Dismiss Compl. ("Def.'s MTD") at 2 n.1, ECF No. 9.

Plaintiff's claims stem from three qui tam actions filed in 2008, 2009, and 2013.[2] *See* Compl. at 7. The earlier two cases are sealed and inaccessible. *See* Def.'s MTD Ex. B. The complaint, however, contains a letter plaintiff received from the United States Attorney's Office for the Northern District of California ("DOJ") in response to plaintiff's request for the government to intervene in his 2008 qui tam action. *See* Compl. at 52–54. The relevant language follows:

> Dear Mr. Bruzzone: As you know, the United States has declined to intervene in this case, and therefore is not a litigant to the underlying action. However, the United States remains the real party in interest, entitled to the majority of any damages and penalties recovered on its behalf . . . . Accordingly I thought it might be helpful to remind you of certain provisions in the False Claims Act and to advise

---

[1] *See Bruzzone v. McManis*, No. 18-CV-01235-PJH, 2018 WL 5734546, at *1 (N.D. Cal. Oct. 31, 2018), *aff'd*, 785 F. App'x 503 (9th Cir. 2019) ("Bruzzone has a long history litigating the facts giving rise to this action. He has filed several actions against Intel . . . its employees, its agents, its attorneys, and more recently judges that have presided over those actions) (citing *Bruzzone v. Intel Corp.*, No. 218CV0865KJMDBPS, 2019 WL 6878152 (E.D. Cal. Dec. 17, 2019), *report and recommendation adopted,* No. 218CV0865KJMDBPS, 2020 WL 731623 (E.D. Cal. Feb. 13, 2020), *appeal dismissed,* No. 20-15326, 2020 WL 4728782 (9th Cir. July 2, 2020), *cert. denied,* 141 S. Ct. 567, 208 L. Ed. 2d 183 (2020)); *Bruzzone v. Alsup*, No. 17-CV-04558-DMR, 2017 WL 6520760 (N.D. Cal. Aug. 28, 2017); *Bruzzone v. Intel Corp.*, No. 16-MC-80233-WHA (N.D. Cal. Oct. 31, 2016); *Bruzzone v. Intel Corp.*, No. 16-MC-80126-JST (N.D. Cal. June 13, 2016); *Bruzzone v. Intel Corp.*, No. 16-MC-80111-EMC (N.D. Cal. May 19, 2016); Order Granting Intel's Motion to Declare Michael Bruzzone a Vexatious Litigant, *Bruzzone v. Intel Corp.*, No. 14-CV-01279-WHA, 2014 WL 4090470 (N.D. Cal. Aug. 19, 2014); *Bruzzone v. Intel Corp.*, No. 13-CV-03729-WHA (N.D. Cal. Aug. 12, 2013); *Bruzzone v. Intel Corp.*, No. 11-CV-213829 (Santa Clara Sup. Ct. Nov. 29, 2011); *see also* No. 09-CV-00679-WHA (N.D. Cal. Feb. 17, 2009) (sealed); No. 08-CV-04169-WHA (N.D. Cal. Sept. 3, 2008) (same); *Bruzzone v. Intel Corp*, No. 99-CV-779409 (Santa Clara Sup. Ct. Jan. 20, 1999) (same)).

[2] *Bruzzone* v. *Intel Corp.*, No. 13-CV-03729-WHA (N.D. Cal. Aug. 12, 2013); No. 3:09-CV-00679-WHA (N.D. Cal. Feb. 17, 2009); No. 3:08-CV-04169-WHA (N.D. Cal. Sept. 3, 2008).

> you of certain policy considerations that may assist you in litigating or settling this case. . . .
>
> 1. Your Pro Se Status[:]  While a relator is generally able to maintain the action in the name of the United States following a declination [to intervene] . . . the Ninth Circuit has held . . . that a pro se relator cannot prosecute a qui tam action on behalf of the United States under the False Claims Act. . . .
>
> 6. Settlement[:]  The parties can dismiss this action only with the consent of the Department of Justice.  31 U.S.C. § 3730(b)(1).  Thus, a settlement of this case requires the consent of this office . . . .  Accordingly, we recommend that once the subject of settlement is raised, the parties should notify government counsel and keep the government informed as discussions progress.
>
> With regard to settlement, we have the following comments: . . .
>
> The False Claims Act provides that in a declined qui tam case, the relator shall receive 25 to 30 percent of the proceeds of the action.  31 U.S.C. § 3730(d)(2).  (Under certain circumstances, the award may be less than 25 percent  31 U.S.C. § 3730(d)(3).)  The agreement on a percentage is a matter to be addressed by the government and the relator—or the court if agreement cannot be reached . . . .
>
> I hope that providing you with these guidelines will facilitate any negotiations and help avoid an agreement between the parties that the United States cannot support.

*Id.* at 52–54.  Plaintiff asserts this letter created a binding contract with the government because it "is the USDOJ standard 'boiler plate' agreement . . . to enlist any relator original source following non intervention . . . to continue on a federal theft claim through its recovery."  *See* Pet'r Sur-Reply U.S. Reply Br. Subject 12(b)(1) Dismissal ("Pl.'s Surreply") at 16, ECF No. 15.  Plaintiff relies on the "25 to 30 percent" provision to justify his damages request.  *Id.* at 15; *see also* Compl. at 10.

      In 2010, the FTC settled an enforcement action against Intel for anticompetitive behavior.  *See* Compl. at 31; Def.'s MTD Ex. C.  In 2013, plaintiff filed a qui tam action to "test for U.S. attorney intervention following [the] FTC [settlement]" because "Bruzzone is th[e] original witness source and FTC discovery aid."  Compl. at 12.  The government declined to intervene, and the case was dismissed.  *See* Def.'s MTD Ex. D at 1.  In 2014, Judge Alsup found Mr. Bruzzone's persistent litigation to be "frivolous, harassing, and brought with no objective good faith expectation of prevailing."  *See* Def.'s Reply Supp. Mot. Dismiss Compl. ("Def.'s Reply") Ex. B at 11, ECF No. 12.  Thus, Judge Alsup granted Intel's motion declaring Mr. Bruzzone a "vexatious litigant."  Def.'s Reply Ex. B at 1.[3]  Plaintiff argues granting this motion was an abuse of discretion and Judge Alsup "has been acting beyond his jurisdiction for 66

---

[3] Judge Alsup also found "[Mr. Bruzzone's continued litigation to be] a flagrant abuse of the judicial process and has enabled Mr. Bruzzone to consume a considerable amount of time and resources from Intel, other defendants, the government, Superior Court judges, the California Court of appeals, and federal judges."  *See* Def.'s Reply Ex. B at 12.

months . . . ." Compl. at 21.  Plaintiff also declares his status as an original source relator for the FTC's 2010 settlement made the DOJ "aware [it] ha[d] a responsibility to provide legal counsel through Intel['s] . . . frivolous vexatious attacks . . . and to represent Bruzzone to[] correct Judge Alsup['s] errors publicizing Bruzzone 'is not a relator' and 'the United States is [in] no way involved.'" *Id.* at 19 (quoting Order Granting Intel's Motion to Declare Michael Bruzzone a Vexatious Litigant, *Bruzzone v. Intel Corp.*, No. 14-CV-01279-WHA, 2014 WL 4090470, at *1 (N.D. Cal. Aug. 19, 2014)).

In addition, plaintiff contends the DOJ, the United States General Services Administration, Office of the Inspector General—San Francisco Bureau ("OIG"), and several other government actors' refusal to intervene in his three qui tam actions is a breach of contract and the implied covenant of good faith and fair dealing.  *See* Pl.'s Surreply at 16 ("[F]ederal employees of Northern California District, . . . District Judges, [and] State representatives have on every opportunity denied assistance failing to[] intervene on every affirmative court, or regulatory agency decision of antitrust.").  Mr. Bruzzone alleges Intel has continued to engage in price fixing practices through 2019.  *See* Pet'r Reply to USDOJ 12(b)(1) Mot. and Pet'r Mot. to Correct Clerical Omission at Fed. R. Civ. P. 60(a) ("Pl.'s Resp.") at 6, ECF No. 11.  As recent as 2019, plaintiff requested federal agency intervention on a qui tam action against Intel.  *See* Pl.'s Surreply at 9 ("The [OIG] is also informed, and declines investigation . . . in the fifth instance within a 12 year period . . . .").

This Court's good faith attempt to construe Mr. Bruzzone's complaint finds that he alleges the following causes of action:  (1) a qui tam action under the False Claims Act ("FCA") against the government to recover a percentage of the FTC's 2010 settlement; (2) a qui tam action under the FCA against Intel; (3) breach of contract and the implied covenant of good faith and fair dealing by the government; and (4) abuse of discretion by Judge Alsup.  As such, plaintiff requests the following from the Court:  (1) declarative relief that he is entitled to 25–30% of Intel's 2010 settlement with the FTC; (2) declarative relief that he has pled sufficient facts to entitle him to bring a new qui tam action against Intel; (3) a minimum of $68,750,000 in compensatory damages for breach of contract; (4) overturn Judge Alsup's determination that he is "not a  relator" under the FCA; and (5) order the DOJ to intervene on his qui tam action.  *See* Compl. at 39.

### B.  Procedural History

Plaintiff filed his complaint on 15 April 2021.  *See* Compl.  The government filed its Motion to Dismiss on 14 June 2021, noting plaintiff's complaint was missing pages nine through twenty-one.  *See* Def.'s MTD; *see also* Def.'s MTD Ex. A (showing incomplete complaint).  Plaintiff responded in opposition to the government's Motion to Dismiss on 1 July 2021.  *See* Pl.'s Resp.  The Court replaced plaintiff's initial complaint with the complete copy on 2 July 2021.  The government replied in support of its Motion to Dismiss on 19 July 2021.  *See* Def.'s Reply.  On 22 July 2021, the Court entered an order allowing plaintiff to file a surreply to respond to any new arguments raised by the government's reply brief that address the complaint's originally omitted pages.  *See* Order, ECF No. 13.  Plaintiff then filed a Motion for Leave to File a Sur-Reply.  *See* Pet'r Mot. Leave File Surreply Opp'n USDOJ Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(1) ("Mot. Leave"), ECF No. 14.  Plaintiff filed his responsive surreply on 10 August 2021.  *See* Pl.'s Surreply.

**II. The Government's Motion to Dismiss**

The government moves to dismiss plaintiff's complaint for lack of subject-matter jurisdiction under RCFC 12(b)(1).  *See* Def.'s MTD at 1.  The government argues this Court lacks subject-matter jurisdiction over plaintiff's claims because:  (1) "jurisdiction for the False Claims Act lies only in the district courts"; (2) plaintiff "fails to establish a contract"; and (3) "Mr. Bruzzone's claim[s] [are] barred by the statute of limitations."  Def.'s Reply at 4–5, 7–8.

First, the government contends this Court lacks jurisdiction over a FCA action unless plaintiff "first bring[s] the qui tam claim in a district court and receive[s] a decision entitling plaintiff to payment as a valid qui tam relator under the False Claims Act."  *Id.* at 6–7.  Since the district court explicitly determined plaintiff was "not a relator," this Court lacks jurisdiction over plaintiff's qui tam suit and any interrelated claims.  *Id.* at 7.

Second, the government asserts that plaintiff's "December 10, 2008 letter, and . . . the 2008, 2009, and 2013 cases related to that letter . . . are not contracts."  *Id.* at 4.  The government argues this repeated decision to decline to intervene in all of plaintiff's actions suggests there was no meeting of the minds between parties.  *Id.*  The other elements required to prove the existence of plaintiff's alleged contracts are also conspicuously missing from the complaint, according to the government.  *Id.*

Third, applying a "six year statute of limitations to Mr. Bruzzone's April 2021 complaint[] would mean Mr. Bruzzone's claim could accrue no later than April 2015."  Def.'s Reply at 7.  The government concludes all the potential contracts alleged by Mr. Bruzzone began to accrue before this date and are barred by the statute of limitations.  *Id.* at 7–8.

**III. Legal Standard of the Government's Motion to Dismiss**

    **A.  Subject-Matter Jurisdiction**

Subject-matter jurisdiction is a threshold matter that must be addressed before the Court evaluates the merits of plaintiff's claims.  *See Deponte Invs., Inc. v. United States*, 54 Fed. Cl. 112, 114 (2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).  In considering a motion to dismiss for lack of subject-matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Plaintiffs "bear the burden of establishing the court's jurisdiction by a preponderance of the evidence."  *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (citing *Trusted Integration, Inc.*, 659 F.3d at 1163).  "If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim."  *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (per curiam) (citing RCFC 12(h)(3)).

"[T]he Court of Federal Claims, like all federal courts, is a court of limited jurisdiction."  *Terran ex rel. Terran v. Sec'y of Health & Hum. Servs.*, 195 F.3d 1302, 1309 (Fed. Cir. 1999).  Under the Tucker Act,

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2018). The Tucker Act, however, does not create an enforceable substantive right, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Smith v. United States,* 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). The Tucker Act's jurisdiction over contracts is limited further to "extend[] only to contracts either express or implied in fact, not to claims on contracts implied in law." *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996); *see also Greer v. United States*, 257 F. App'x 294, 295 (Fed. Cir. 2007).

### B. Pro Se Litigants

Pro se litigants are granted greater leeway than parties represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."). Despite such leeway, this Court has long recognized "the leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007). The pro se plaintiff—like any other plaintiff—must bear "the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). If a petitioner acts pro se in the drafting of her pleadings, it "may explain its ambiguities, but it does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## IV. Analysis of the Court's Jurisdiction Over Plaintiff's Claims

### A. Plaintiff's FCA Qui Tam Action

Plaintiff alleges he provided the government with information that led to Intel's 2010 settlement with the FTC, which qualifies him as an "original source" under 31 U.S.C. §§ 3730(e)(B) (2018) and entitles him to 25–30% of the settlement. *See* Compl. at 10. Plaintiff further argues his knowledge of Intel's continued price fixing practices through 2019 allows him to bring a new qui tam action against Intel. *See* Pl.'s Surreply at 21 ("Intel['s] . . . act of price fix[ing] is not discontinued by Intel Corp. until minimally January 1, 2019 and may continue in some ways."). Alternatively, this court purportedly has jurisdiction over plaintiff's qui tam action under 28 U.S.C. § 1346 (2018).

"The False Claims Act provides that a private citizen who meets certain criteria may bring a qui tam suit in federal district court in the name of the United States, to remedy a fraudulent claim made against the government." *Stinson, Lyons & Bustamante, P.A. v. United*

*States*, 79 F.3d 136, 138 (Fed. Cir. 1996) ("[T]he suit must be brought in district court.") (citing 31 U.S.C. § 3732(a) (2018)).  If the government acts on the fraudulent claim, "the 'relator'—the term used for a qui tam plaintiff—is entitled to a portion of any recovery in an amount up to 30% . . . ." *Id.*  The Court of Federal Claims is not among the courts authorized to receive a qui tam suit.  *See LeBlanc v. United States*, 50 F.3d 1025, 1031 (Fed. Cir. 1995) (citing 31 U.S.C. § 3732(a)) ("The Court of Federal Claims has no authority to [determine if plaintiff has a valid qui tam suit under the False Claims Act] . . . because qui tam suits may only be heard in the district courts.").  Further, the Federal Circuit in both *Leblanc* and *Stinson* held that when a district court determines a plaintiff is not a relator under the FCA, plaintiff may not seek relief under the Tucker Act.  *See Stinson*, 79 F.3d at 138 ("Stinson, like Leblanc, has already been adjudicated not to be a relator under the False Claims Act. . . .  Moreover, jurisdiction lies only in the district court, thus the Court of Federal Claims correctly dismissed Stinson's claim.")

The Northern District of California held that plaintiff was "not a relator" to the FTC's 2010 settlement.  *See* Compl. at 64–69.  Plaintiff's attempt to bring a new qui tam action in this Court against Intel was not preceded by a federal district court's determination that plaintiff is a relator under the FCA.  Without a federal district court's initial determination that plaintiff is a relator, Mr. Bruzzone has no "claim under the Tucker Act" because "jurisdiction lies only in the district court[s]."  *See Stinson*, 79 F.3d at 138; *see also LeBlanc*, 50 F.3d at 1031 ("The Court of Federal Claims has no authority to make [a] determination [that plaintiff had a valid qui tam suit] because qui tam suits may only be heard in the district courts.") (citing 31 U.S.C. § 3732(a)). The Court of Federal Claims cannot make that determination.  *See Stinson*, 79 F.3d at 138.

Finally, plaintiff's interpretation of the jurisdiction conveyed by 28 U.S.C. § 1346 is incorrect.  The purpose of the statute is "to carve out an exception to the statutory rule that claims brought against the United States and exceeding $10,000 must originate in the Court of Federal Claims."  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 686 (2006).  On its own terms, 28 U.S.C. § 1346 provides *federal district courts* with original jurisdiction concurrent with the Court of Federal Claims for civil actions not exceeding $10,000.  Plaintiff misinterprets this to imply the Court of Federal Claims must then have original jurisdiction over qui tam claims exceeding $10,000.  The statute, however, says nothing about this Court's jurisdiction over qui tam actions exceeding $10,000.  As stated in *Stinson,* jurisdiction over qui tam actions "lies only in the district court."  *Stinson,* 79 F.3d at 138.  Section 1346 does not displace the exclusive jurisdiction 31 U.S.C. § 3732(a) places in federal district courts—the statute is inapplicable here.  28 U.S.C. § 1346(a) (2018).

### B. Plaintiff's Breach of Contract Claims

Plaintiff alleges the existence of various contracts:  (1) an express contract with the government created by the DOJ's letter declining to intervene in plaintiff's 2008 qui tam action; (2) an implied contract with the DOJ and OIG to intervene in plaintiff's 2008, 2009, and 2013 qui tam suits; and (3) implied contracts with the FBI and FTC based on plaintiff's previous reporting and investigation efforts.  *See* Compl. at 4–5, 10–11, 18–21, 24–32, 43–49, 51–60; Pl.'s Resp. at 10, 12; Pl.'s Surreply at 16, 22–26.

The Tucker Act conveys jurisdiction to the Court of Federal Claims for "express and implied contract[s] with the United States." 28 U.S.C. § 1491(a)(1) (2018). This jurisdiction, however, "extends only to contracts either express or implied in fact, not to claims on contracts implied in law." *Hercules Inc.*, 516 U.S. at 423; *see also Greer*, 257 F. App'x at 295 ("[T]he Tucker Act does not extend to contracts implied in law.") (citations omitted). "The question of whether a contract exists generally appears not to be a jurisdictional one, unless, however, a plaintiff does not plausibly allege the existence of a contract." *Perry v. United States*, 149 Fed. Cl. 1, 12 (2020), *aff'd,* No. 2020-2084, 2021 WL 2935075 (Fed. Cir. July 13, 2021) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) (internal quotation marks omitted). This can happen when plaintiff makes allegations that are "immaterial and made solely for the purpose of obtaining jurisdiction." *Id.* (quoting *Lewis v. United States*, 70 F.3d 597, 603–04 (Fed. Cir. 1995)). Courts have dismissed breach of contract claims "for lack of subject matter jurisdiction if the claim is wholly insubstantial and frivolous." *Ibrahim v. United States*, 799 F. App'x 865, 867 (Fed. Cir. 2020) (quoting *Lewis*, 70 F.3d at 602–04) (internal quotation marks omitted).

In *Ibrahim*, plaintiff responded to a New Jersey child support order by mailing a letter to several New Jersey officials, stating he "received [their] offer and accept[ed] it, subject to conditions set forth in the rest of the letter . . . ." *Ibrahim*, 799 F. App'x at 866 (internal quotation marks omitted). Plaintiff's letter asserted failure to comply with the stated conditions would result in the government's obligation to pay him $3.5 million in damages. In rejecting plaintiff's assertion of a valid contract, the Federal Circuit reaffirmed this Court's reasoning:

> As the Claims Court concluded, Ibrahim's complaint and supplement do not set forth any non-frivolous factual allegations from which the Claims Court could have plausibly concluded that Ibrahim had a contract with the United States government. Instead, it only appears that Ibrahim sent several governmental officials an unsolicited letter, which is not a contract.

*Id.* at 867 (citing *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1019 (Fed. Cir. 1996)). Mr. Bruzzone's claim to an express or implied-in-fact contract relies on the DOJ's December 2008 letter (*supra* Part I.A). This letter clarifies the DOJ's decision to decline intervention in plaintiff's suit and provides generic advice for how a pro se plaintiff must proceed in a qui tam action after the government has declined to intervene. *See* Compl. at 52–54. The letter's language is broad, citing no facts specific to Mr. Bruzzone's claim. *Id.* Its intent is to provide generic procedural advice to pro se plaintiffs. *Id.* ("helpful to remind you"; "may assist you"; "providing you with these guidelines"). On its face, the letter appears to be the DOJ's boilerplate response declining to intervene for pro se plaintiff's pursuing qui tam actions.

Like the plaintiff in *Ibrahim*, Mr. Bruzzone does not "set forth any non-frivolous factual allegations from which [this] Court could . . . plausibly conclude[] that" plaintiff "had a contract with the United States government." *Ibrahim*, 799 F. App'x at 867. Nowhere in the complaint does plaintiff explain how an advisory letter constitutes an offer, nor does plaintiff identify anything on the record alleged to be plaintiff's acceptance. As the record only shows the government sent an unsolicited advisory letter to plaintiff, and "an unsolicited letter . . . is not a

contract," the DOJ's 2008 letter is not an express or implied-in-fact contract. *Id.* (citing *Wells Fargo Bank, N.A.*, 88 F.3d at 1019.

On that basis, any alleged contract formed by the 2008 letter can only be one implied in law. An agreement "implied in law," also referred to as a quasi-contract, is a "fiction of law," involving an imputed promise to perform a legal duty for the sake of justice. *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923); *quasi-contract*, Black's Law Dictionary (11th ed. 2019) ("A quasi-contract is not actually a contract but instead is a remedy that allows the plaintiff to recover a benefit conferred on the defendant."). This Court has no jurisdiction over implied-in-law agreements. *See Greer*, 257 F. App'x at 295 (citing *Hercules Inc.*, 516 U.S. at 423). Thus, this Court has no jurisdiction over any alleged contract related to the DOJ's 2008 letter. *Id.*

Turning to plaintiff's other implied contract claims, Mr. Bruzzone argues the filing of a qui tam action creates an implied contract with the government. *See* Pl.'s Surreply at 19 ("Terms and conditions of the contract are accepted by relator upon filing suit"). Plaintiff reasons the DOJ and OIG's decisions to decline intervention on his qui tam action amounts to breach of an implied contract. *See* Compl. at 12.

For this Court to have jurisdiction over an implied contract, it must be one implied in fact. *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324–25 (Fed. Cir. 1997). An implied-in-fact contract must be "founded upon a meeting of the minds . . . [which] is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.* at 1326 (citing *Hercules Inc.*, 516 U.S. at 423). The record shows that in all three of plaintiff's qui tam actions, the government declined to intervene. *See* Compl. at 12. The government's repeated decision to forgo intervention in plaintiff's suits infers there was no meeting of the minds. Without a meeting of the minds, this contract cannot be one implied in fact. Moreover, the Federal Circuit has repeatedly stated, "a qui tam action does not create a contract implied in fact between the relator and the government within the Court of Federal Claim's jurisdiction. *See Jones v. United States*, 682 F. App'x 930 (Fed. Cir. 2017); *Nasuti v. United States*, 581 F. App'x 904 (Fed. Cir. 2014); *Woods v. United States*, 122 F. App'x 989 (Fed. Cir. 2004). As such, any implied contract is one implied in law, and *Greer* makes clear, "the Tucker Act does not extend to contracts implied in law." *Greer*, 257 F. App'x at 295 (citing *Hercules Inc.*, 516 U.S. at 423).

Plaintiff's implied contracts with the FBI arose from "two meetings between Mr. Bruzzone and Mr. Jack Felski, field agent . . . of the [FBI]" in the 1990's. *See* Compl at 25. The FBI documents supplied by Mr. Bruzzone's complaint confirm he met with the FBI and submitted information related to the same claims raised here. *See* Compl. at 44. Plaintiff fails to explain how a meeting with the FBI, or any confirmation the FBI received plaintiff's document submissions, created an implied contract. Plaintiff's alleged contract with the FTC is even more attenuated as the record only contains a few letters acknowledging receipt of document submission by plaintiff. *See* Compl. at 46, 56, 58. As with *Ibraham*, these implied contract claims are "wholly insubstantial and frivolous," and this Court lacks subject-matter jurisdiction over them. *Lewis*, 70 F.3d at 602.

In sum, plaintiff fails to allege a viable contract because: (1) an "unsolicited letter . . . is not a contract," *Ibrahim*, 799 F. App'x at 867; and (2) any implied contracts asserted by plaintiff must be implied in law and "the Tucker Act does not extend to contracts implied in law." *Greer*, 257 F. App'x at 295. Without evidence of a contract, a party cannot breach the covenant of good faith and fair dealing. *See Scott Timber Co. v. United States,* 692 F.3d 1365, 1372 (Fed. Cir. 2012); *see also Jones*, 682 F. App'x at 932 ("[T]he filing of a qui tam action does not give rise to any contractual obligation of good faith and fair dealing enforceable under the Tucker Act.") (quoting *Nasuti*, 581 F. App'x at 905) (internal quotation marks omitted).

### C. Statute of Limitations

Even if the Court had jurisdiction over this suit, each of plaintiff's claims would be barred by the Tucker Act's six-year statute of limitations. *See* 28 U.S.C. § 2501 (2018). Mr. Bruzzone filed his complaint on 15 April 2021; the six-year window accordingly relates back to 15 April 2015. *Id.* Any claim which began to accrue before this date is barred by the Tucker Act's statute of limitations.

While plaintiff alleges his claims accrued only sixty-six months before filing this action, he does not provide any facts to support his allegation. He does not explain how the 2008 letter, or the 2008, 2009, and 2013 cases were not breached until sixty-six months before filing this action. Indeed, plaintiff's final qui tam action, which he alleges was a contract with the government, was dismissed in the Northern District of California in February 2014—more than seven and a half years prior to filing his complaint. *See* Mot. to Dismiss at Ex. D, ECF No. 9. Accordingly, all of plaintiff's claims fall well outside the Tucker Act's statute of limitations. 28 U.S.C. § 2501.

Plaintiff argues his claims are not barred by the statute of limitations because the continuing claims doctrine applies. Pl.'s Surreply at 24. His argument seems to be that the continuing claims doctrine applies because the government declined to cooperate with his claim as recently as November 2019. *Id.* at 23. Plaintiff points, for example, to events in Fall 2019 when he reached out to a contracting officer "seeking position [sic] on contract grievance" and separately contacted a representative for the GSA. *Id.* Plaintiff alleges the contracting officer never responded to his request and the representative for the GSA determined "[it] will not pursue the qui [t]am at this time." *Id.* According to plaintiff, his claim accrued on the date the representative for the GSA determined it would not pursue his claim. *Id.*

Plaintiff's allegations are insufficient under the continuing claims doctrine. The continuing claims doctrine allows a claim after the statute of limitations lapses if the claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). Plaintiff fails to show how his attempted correspondence with government representatives in November 2019 amounts to "distinct events or wrongs, each having [their] own associated damages." These facts, therefore, are insufficient to justify applying the continuing claims doctrine to plaintiff's claims. *Brown Park Ests.*, 127 F.3d at 1456. Thus, even if the Court had jurisdiction over plaintiff's claims they would be barred by the statute of limitations. 28 U.S.C. § 2501 (2018).

## VI. Conclusion

The Court has considered all of plaintiff's arguments. To the extent not discussed specifically herein, they are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court.[4] Plaintiff failed to establish subject-matter jurisdiction and his claims are barred by the Tucker Act's statute of limitations. Accordingly, the Court hereby: (1) **GRANTS** the government's motion to dismiss; and (2) **DISMISSES** plaintiff's complaint.[5] The Clerk is directed to **DISMISS** the case.

**IT IS SO ORDERED.**

s/ Ryan T. Holte<br>
RYAN T. HOLTE<br>
Judge

---

[4] Plaintiff's allegations against Judge Alsup are not reviewable under this Court's jurisdiction and plaintiff's allegations against Judge Alsup have already been dismissed with prejudice by the U.S. District Court for the Northern District of California. *See Bruzzone*, 785 F. App'x 503.

[5] The Court also issued an order on 22 July 2021 authorizing plaintiff to file a surreply. *See* Order, ECF No. 13. Plaintiff responded by moving the Court for leave to file his surreply, which he filed on 10 August 2021. *See* Mot. Leave; Pl.'s Surreply. Accordingly, the Court also **GRANTS** plaintiff's motion for leave, ECF No. 14.